Ryan F. Thomas, Esq. (SBN 230491)
Richard C. O'Hare, Esq. (SBN 167960
Anthony Bentivegna, Esq. (SBN 129487)
JOHNSTON | THOMAS, Attorneys at Law, P.C.
1400 N. Dutton Avenue, Suite 21
Santa Rosa, California 95401
Phone (707) 545-6542
Facsimile (707) 545-1522
E-mail:  rthomas@johnstonthomas.com
         rohare@johnstonthomas.com
         abentivegna@johnstonthomas.com

Attorneys for Plaintiff
YOUR TOWN ONLINE, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUR TOWN ONLINE, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALL TRIBAL NETWORKS, LLC, a California limited liability company; SPY EGO MEDIA, LLC a Nevada limited liability company; JAMES GUSMAN, an individual; ROUND VALLEY INDIAN TRIBES, a federally recognized Indian tribe; JAMES RUSS, an individual; MICRONET COMMUNICATIONS, INC., a Texas Corporation; and, CMS HOLDINGS, an Illinois limited liability company dba IntelPath.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Your Town Online, Inc. a California corporation, alleges as follows:

### I.   NATURE OF ACTION

1.     Plaintiff Your Town Online is a small wireless and broadband internet service provider that provides service to rural and tribal areas of Mendocino County.  Defendant's Spy Ego Networks through All Tribal Networks (an LLC in which Spy Ego is the managing member) and its own managing member James Gusman is attempting to start a competing wireless and broadband service in the same area.  While the competition is welcome, these defendants are unfairly and

1    unlawfully interfering with Your Town Online's business.  Such unfair and unlawful activities

2    include, inter alia, causing the Round Valley Indian Tribes to obtain a license with the FCC which

3    should not have been issued because it interferes with Plaintiff's ongoing and licensed broadcasts;

4    using this interference to disrupt Plaintiff's service to its customers; disparaging Plaintiff's services

5    to Plaintiff's customers; and using the threat of its own unlawful interference with Plaintiff's radio

6    broadcasts as a marketing tool to entice Plaintiff's customers to subscribe to its service rather than

7    Your Town Online's.

## II.  PARTIES

9        2.      Plaintiff Your Town Online, Inc. (hereinafter "Your Town Online" or "Plaintiff"), is

10   a corporation organized and existing under the laws of the State of California and, at all times

11   relevant hereto, is authorized to do and does business in the County of Mendocino, California.

12       3.      Plaintiff is informed and believes, and on that basis alleges, that Defendant All

13   Tribal Networks, LLC (hereinafter "All Tribal Networks") is a limited liability company organized

14   and existing under the laws of the State of California and, at all times relevant hereto, had its

15   principal place of business in the County of Mendocino, California.

16       4.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Spy Ego

17   Media, LLC (hereinafter "Spy Ego") is a limited liability company organized and existing under the

18   laws of the State of Nevada.  Plaintiff is further informed and believes that Spy Ego is the managing

19   member of Defendant All Tribal Networks.

20       5.      Plaintiff is informed and believes, and on that basis alleges, that Defendant James

21   Gusman is an individual residing in Mendocino County, California.  Plaintiff is further informed

22   and believes that Defendant James Gusman is the managing member of Defendant Spy Ego

23   Networks.

24       6.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Round

25   Valley Indian Tribes is a federally recognized Indian tribe with its reservation located in the County

26   of Mendocino, California.

27       7.      Plaintiff is informed and believes, and on that basis alleges, that Defendant James

28   Russ is an individual residing in Mendocino County, California and at all relevant times herein was

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1    the president of the Round Valley Indian Tribes Tribal Council.

2          8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Micronet

3    Communications, Inc., is corporation, organized and existing under the laws of the state of Texas

4    with its principal place of business in Plano, Texas.

5          9.      Plaintiff is informed and believes, and on that basis alleges, that Defendant CMS

6    Holdings, LLC, is a limited liability company organized and existing under the laws of the State of

7    Illinois and, with at its principal place of business in Hinsdale, Illinois. Plaintiff is informed and

8    believes, and on that basis alleges, that CMS Holdings, LLC does business under the name

9    IntelPath.  (Hereinafter CMS Holdings, LLC shall be referred to as "IntelPath")

10         10.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant

11   herein, Defendants, and each of them, were the agents, servants, and/or employees of their co-

12   Defendants, and in doing the things alleged herein, were acting within the scope of their authority

13   as such agents, servants, and/or employees and with the permission, consent, and/or ratification of

14   their co-Defendants.

15                              **III. JURISDICTION AND VENUE**

16         11.     This Court has original subject matter jurisdiction over this action pursuant to 28

17   U.S.C. § 1331 (federal question) and under section 39 of the Lanham Act 15 U.S.C. §1121(a).  The

18   Court has supplemental jurisdiction over Plaintiff's related state and common law claims pursuant

19   to 28 U.S.C. §§ 1367(b) as they are substantially related to the claims for which this Court has

20   original jurisdiction and form part of the same case or controversy.

21         12.     Venue is proper in this Court under 28 U.S.C. § 1391 a substantial part of the events

22   or omissions giving rise to Plaintiff's claims occurred in this District.

23                             **IV. INTRADISTRICT ASSIGNMENT**

24         13.     This action arises in Mendocino County and Shasta County and should be assigned

25   to the Eureka Division.

26                                       **V.  FACTS**

27         14.     Plaintiff Your Town Online is a small wireless and broadband internet service

28   provider.   Since 2002, Your Town Online, or its predecessor Willitsonline, LLC, has been

- 3 -

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

providing broadband services to communities in the rural and tribal areas of Mendocino County in Northern California.  Plaintiff now serves over 1000 business and personal customers.

15.     Your Town Online also provides internet service to the Round Valley United School District and the Eel River Charter School. The service to those schools is essential for them to function as educational institutions for their students, a service that has especially been dependent on reliable connections for student instruction via Zoom and other applications during the COVID-19 pandemic. Your Town Online's with the Round Valley United School District requires Plaintiff to provide network transmission services on its network to interconnect District students and staff with these resources at various levels of attainable bandwidths. For that purpose, and at considerable expense, Plaintiff installed two wireless transmission systems, one of which is located on the roof of the Round Valley High School Gymnasium and the other of which was installed on private property in Round Valley.

16.     To provide internet services to its customers in the Round Valley and Covello areas, Your Town Online utilizes a point-to-point microwave communication system to transmit data between a transmitter and receiver located in Willits California and a transmitter and receiver located 16 miles away at the top of Sanhedrin Mountain.  On October 10, 2007, Plaintiff's predecessor, Willitsonline, LLC, was issued a radio frequency license by the Federal Communications Commission through the Universal Licensing System (ULS), with the call sign of WQHQ838, authorizing it to transmit as a common carrier, Fixed Point-to-Point, from the vicinity of Mount Sanhedrin, Mendocino County, among other locations. At the expiration of the license, Plaintiff was issued a license with the call sign WRBY237.  At all times relevant, Willitsonline, LLC and then Your Town Online, have been continuously transmitting pursuant to these licenses at a frequency of approximately 6 GHz, on land leased from Fisher Wireless Services, Inc.

17.     Plaintiff is informed and believes, and on that basis alleges, that in or around 2018, Defendant Gusman, through his company Spy Ego Media, LLC began marketing computer network design, engineering, and security services to American Indian tribes throughout the country. Plaintiff is further informed and believes, and on that basis alleges, that thereafter Spy Ego Media began providing such services for the Round Valley Indian Tribes.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

18.     Plaintiff is informed and believes, and on that basis alleges, that in 2020, Defendant Gusman caused Spy Ego Media to form Defendant All Tribal Networks to be a provider of cellular and internet services to the rural and tribal areas of Mendocino County.  Plaintiff is further informed and believes that All Tribal Network began working with the Round Valley Indian Tribes to put the infrastructure in place for All Tribal Network's cellular and internet services.

19.     Plaintiff is informed and believes, and on that basis alleges, that in approximately December of 2020, All Tribal Networks and/or Round Valley Indian Tribe installed transmitters and receivers on Mount Sanhedrin and in the town of Willits.  The transmitter and receiver on Mount Sanhedrin were placed on the same tower where Plaintiff's transmitter and receiver are located.   All Tribal Network's transmitter and receiver in the town of Willits is located approximately one mile from Plaintiff's transmitter and receiver.

20.     Plaintiff is informed and believes, and on that basis alleges, that on January 12, 2021, All Tribal Networks and/or Round Valley Indian Tribe began testing their equipment on the Mount Sanhedrin to Willits path using frequencies in both the 11GHz band and the 6Ghz band.

21.     When All Tribal Networks tested their equipment using a frequency in the 6GHz band, it caused severe interference with Plaintiff's reception of its Sanhedrin to Willits broadcast, causing disruption in service to Your Town Online's customers.

22.     Your Town Online immediately notified All Tribal Networks of the actual interference that the transmission caused to Your Town Online's reception at its Willits receiver. Your Town Online also reported this interference to Defendant IntelPath, an FCC approved frequency coordinator, so that, IntelPath could work with Micronet, All Tribal Network's and Round Valley Indian Tribes' frequency coordinator, to determine if the 6Ghz channel on which All Tribal Networks had broadcasted could be utilized without interference to Your Town Online's service or whether such channel was not available on the path.

23.     Defendants Round Valley Indian Tribes and/or All Tribal Networks later acknowledged the interference caused by their equipment in their own publications and advertisements. For example, on March 29, 2021, these Defendants issued a publication and advertisement entitled "Illegal Providers Interfering With Services."  This publication identified the

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

6 GHz and 11 GHz transmission capabilities of All Tribal Networks and stated:

> The 11 GHz system has more capacity and has more channels which provided an easier process to design and secure the channels, however due to it having a frequency that is potentially more impacted by heavy rains and adverse weather, the design planned to use the 6 GHz microwave spectrum to provide a more reliable connection during these conditions. One of the issues experienced throughout the wireless field is the 6 GHz frequencies being very congested and not a lot of channels for organizations to utilize. So, the design process is more challenging, and the coordination is critical to make sure that systems do not interfere with each other. . ..
>
> . . . On Tuesday, December (sic) 12th., at approximately 12:00 PST the microwave systems connecting Covelo to Big Signal Peak and then into Willits was turned up to test the network path with the assumption that we had the reservation and all organizations that use Microwave frequencies were in their legal and respective approved locations. After the systems were enabled, the system was able to be aligned and worked as anticipated without any abnormal interference on our system. On the morning of Wednesday January 13th, we were alerted that another carrier was having issues with their microwave system due to interference. We immediately began working with Micronet to understand if and why our system would have been the source of interference with the other carrier. It was discovered that while Micronet had the temporary reserved status, **this other carrier was illegally operating in [an] area that they were not and are not approved to be broadcasting in**. Basically, it was identified that this carrier was using microwave frequencies in an unauthorized and unapproved/unlicensed location for their transmitters. . . . [emphasis added]

24.     The carrier referenced in this publication is Your Town Online.  Contrary to this publication, Your Town Online was not "illegally operating" but was instead at all times licensed to transmit at 6 GHz, as a common carrier, many years prior to the installation of Defendant's transmitters on Mount Sanhedrin.  Your Town Online's predecessor, Willitsonline, LLC, placed its transmitter on Mount Sanhedrin in the location set forth in the license that was issued in 2007 and assigned the call sign WQHQ838.

25.     In late 2017, Your Town Online was working with the FCC to renew the license that was issued in 2007 and assigned the call sign WQHQ838. During this process, Your Town Online cooperated with the FCC by, inter alia, obtaining a new FRN, providing evidence of Willitsonline, LLCs merger into Your Town Online, and paying a $655 fee.  By December 2017, Your Town Online believed the licensed had been renewed.

26.     On March 21, 2018, IntelPath contacted Your Town Online and advised that the Sanhedrin call sign, WQHQ838, had expired and offered to apply for a new call sign and to re-apply for the paths in the WQHQ838 license.   Your Town Online requested that IntelPath reapply

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1   for the paths.

2       27.    On July 23, 2018, the FCC issued Your Town Online a radio frequency license by

3   with the call sign of WRBBY237, authorizing it to transmit as a common carrier, Fixed Point-to-

4   Point, from Mount Sanhedrin to Willits.  Unbeknownst to Your Town Online, when IntelPath

5   reapplied for the license, the incorrect coordinates were entered for the Mount Sanhedrin

6   transmitter.  Instead of the exact coordinates for the tower where Your Town Online had been

7   broadcasting for years on land leased from Fisher Wireless Services, Inc., coordinates for another

8   location, about 600 yards away, were entered.

9       28.    Defendants Round Valley Indian Tribes and/or All Tribal Networks publication is

10   correct in stating that the 6 GHz frequencies are "very congested." Thus, it is very important that

11   approved uses of the frequency not interfere with those already in place. It does not matter if the

12   transmitter coordinates of the parties vary from the exact, specific latitude / longitude locations on

13   licenses for Mount Sanhedrin. Any broadcast at 6 GHz by Defendants is going to prevent Plaintiff

14   from providing internet service to customers, including the intended beneficiaries such as the school

15   children attending virtual classes at Round Valley School District and, at any rate, Plaintiff's

16   locations were necessarily approved as part of the rigorous inspection procedures before any of

17   those transmitters went online.

18       29.    Defendants' transmission at 11 GHz poses causes no interference with Your Town

19   Online's reception, but their use of the additional and unneeded frequency in the  6 GHz band

20   completely marginalizes and interferes with Your Town Online's ability to perform under its

21   contractual obligations to customers. As admitted in their publication, Defendants' transmission at 6

22   GHz on or about January 13, 2021, interfered with the pre-existing and continuous transmission of

23   Your Town Online.

24       30.    The only purpose behind Defendants' use of the 6 GHz frequency is to interfere with

25   and undermine Plaintiff's business relationships. The statement that the 6 GHz frequency is

26   sometimes needed for "heavy rains and adverse weather," is simply untrue. Radio transmissions are

27   unaffected by weather conditions. Even if they were, Defendants can rely upon their 11 GHz path

28   and if necessary, select a second frequency away from the 6 GHz previously reserved for Plaintiff.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

31.     On March 5, 2021, a Cease and Desist letter was sent to Defendants confirming the interference with Plaintiff's transmissions, and also identifying false statements issued by Defendants' representative to third parties asserting "issues with the County of Mendocino"; that the FCC "deducted" some of Plaintiff's licenses;  that Plaintiff has had "hassle/drama"; and that there are "countless horror stories" concerning Plaintiff and its services. No response was received.

32.     Your Town Online's customers have indicated that that they have been approached by Defendants to switch providers, with the pitch of sowing doubt and discord concerning the reliability of Plaintiff's service. Plaintiff has also received prospective cancellations of their agreements to provide internet services as a result.

33.     In a Petition for Waiver addressed to the FCC dated August 31, 2020, Defendant James Russ represented falsely that "Willets (sic) Online is available but does not offer speeds above 6mbps for downloads and 768mbps to upload, and their service is down over 50 percent of the time."

34.     Since March of 2021, All Tribal Networks has repeatedly threatened to again "flip the switch, and begin broadcasting permanently on their 6Ghz channel and interfere with Your Town Online's reception.  For example, All Tribal Networks threatened to resume interference on May 18, 2021, and on dates thereafter unless Plaintiff pays the sum of $7,000 per month. The demand in part, states: "All Tribal Networks is amenable to entering into an agreement for All Tribal Networks and Willits Online to share All Tribal Network's spectrum for a limited duration in exchange for $7,000.00/mo. payment, paid in advance." Plaintiff is informed and believe, and thereon relies, that Defendants' activation on the 6 GHz frequency is imminent and that activation will again effectively prevent service to over 1000 of Plaintiff's customers.

35.     Plaintiff is informed and believes, and on that basis alleges, that on or about March 25, 2021, Round Valley Indian Tribes was issued a Private Operational Fixed Point-to-Point, Microwave Public Safety Pool license by the Federal Communications Commission through the Universal Licensing System (ULS), with a call sign of WRMD895, authorizing it to transmit from the vicinity of Mount Sanhedrin, Mendocino County, on 2 distinct paths, from specified coordinates.  One path transmits at a frequency of approximately 11 GHz and the other transmits at

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

the same frequency as one of the YOUR TOWN ONLINE paths, i.e. approximately 6 GHz.

36.     Prior to issuing a license the FCC requires that an authorized frequency coordinator determine that broadcasting on the proposed frequency along the proposed path will not interfere with the transmission and/or reception of existing licensees.  47 CFR § 90.175 requires that license applications for a new frequency assignment include a showing of frequency coordination. 47 CFR § 90.175(c) states: "For frequencies above 800 MHz: When frequencies are shared by more than one service, concurrence must be obtained from the other applicable certified coordinators."

37.     Frequency coordination is also regulated by 47 CFR § 101.103, which provides in part:

(a) Assignment of frequencies will be made only in such a manner as to facilitate the rendition of communication service on an interference-free basis in each service area. Unless otherwise indicated, each frequency available for use by stations in these services will be assigned exclusively to a single applicant in any service area. All applicants for, and licensees of, stations in these services must cooperate in the selection and use of the frequencies assigned in order to minimize interference and thereby obtain the most effective use of the authorized facilities. In the event harmful interference occurs or appears likely to occur between two or more radio systems and such interference cannot be resolved between the licensees thereof, the Commission may specify a time sharing arrangement for the stations involved or may, after notice and opportunity for hearing, require the licensees to make such changes in operating techniques or equipment as it may deem necessary to avoid such interference. . .

. . .(e) Where frequency conflicts arise between co-pending applications in the Private Operational Fixed Point-to-Point Microwave, Common Carrier Fixed Point-to-Point Microwave and Local Television Transmission Services, it is the obligation of the later filing applicant to amend his application to remove the conflict, unless it can make a showing that the conflict cannot be reasonably eliminated. Where a frequency conflict is not resolved and no showing is submitted as to why the conflict cannot be resolved, the Commission may grant the first filed application and dismiss the later filed application(s) after giving the later filing applicant(s) 30 days to respond to the proposed action.

38.     Plaintiff is informed and believes and on that basis alleges that in January 2021, All Tribal Network and or Round Valley Indian Tribe's frequency coordinator, Micronet, was notified of the actual interference caused by All Tribal Network's broadcast on its proposed 6 Ghz channel. Despite this actual interference and calculations which predict such interference, Micronet did not obtain concurrence from Your Town Online's frequency coordinator IntelPath.  Furthermore, Micronet represented to the FCC that the use of the proposed frequency would not cause interference and therefore was available for license to Round Valley Indian Tribe.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

39.    Plaintiff is informed and believes and on that basis alleges that due to Micronet's failure to acknowledge the interference caused by the 6 Ghz broadcast on or about March 25, 2021, Round Valley Indian Tribes was issued a Private Operational Fixed Point-to-Point, Microwave Public Safety Pool license by the Federal Communications Commission through the Universal Licensing System (ULS), with a call sign of WRMD895, authorizing it to transmit from the vicinity of Mount Sanhedrin to Willits on both a frequency in the 11 GHz band and on the proposed 6Ghz frequency which caused the interference.

40.    The scope of licensure granted for the "Public Safety Pool" is defined by 47 CFR § 90.15, which provides in relevant part:

> The Public Safety Radio Pool covers the licensing of the radio communications of governmental entities and the following category of activities: Medical services, rescue organizations, veterinarians, persons with disabilities, disaster relief organizations, school buses, beach patrols, establishments in isolated places, communications standby facilities, and emergency repair of public communications facilities. Entities not meeting these eligibility criteria may also be licensed in the Public Safety Radio Pool solely to provide service to eligibles on one-way paging-only frequencies below 800 MHz, i.e., those frequencies with the assignment limitations appearing at § 90.20(d)(13) or (d)(60). . ..

41.    "Public Safety Pool" eligibility is defined by 47 CFR § 90.20. Plaintiff is informed and believes and thereon relies on that Round Valley Indian Tribes and/or ALL TRIBAL NETWORKS, LLC, together with MICRONET COMMUNICATIONS, INC., sought and obtained eligibility pursuant to 47 CFR § 90.20(x), which specifies the qualified applicants and provides specific limitations:

> Persons or organizations maintaining establishment in isolated areas where public communications facilities are not available and where the use of radio is the only feasible means of establishing communication with a center of population, or other point from which emergency assistance might be obtained if needed, **for the transmission of messages only during an actual or impending emergency endangering life, health or property for the transmission of essential communications arising from the emergency. The transmission of routine or non-emergency communications is strictly prohibited.** [emphasis added].

> (A) Special eligibility showing. The initial application requesting a station authorization for an establishment in an isolated area shall be accompanied by a statement describing the status of public communication facilities in the area of the applicant's establishment; the results of any attempts the applicant may have made to obtain public communication service. . ..

Cf. 47 U.S.C. § 301, which provides in relevant part:

1

2

3

4

5

6

> It is the purpose of this [Federal Communications] Act, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State Territory, possession, or District . . . except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act.

7

### FIRST COUNT

8

### (Unlawful Actions Pursuant to Federal Communications Act)

9

42.     Plaintiff incorporates paragraphs 1-41 by reference.

10

43.     Plaintiff brings suit in this Court, *inter alia*, under the authority of the Federal

11

Communications Act, 47 U.S.C. §§ 206, 207, which provide:

12

13

14

15

16

> 206. In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

17

18

19

> 207. Any person claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the Commission as hereinafter provided for or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this Act, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

20

44.     47 U.S.C. §§ 206, 207 establishes and authorizes a private right of action against any

21

common carrier, and further has been broadly construed to encompass matters brought on behalf of

22

common carriers, such as Plaintiff. See, e.g., Maydek v. Bonded Credit Co., (1996), 96 F.3d 1332,

23

1334, citing MCI Telecomms. Corp. v. Teleconcepts, Inc. (1995) 71 F.3d 1086.

24

45.     Since December of 2020 or January of 2021, Defendants Round Valley Indian

25

Tribes and/or All Tribal Networks has/have been engaged as a common carrier for hire within the

26

meaning of 47 U.S.C. § 153 (11) by soliciting Plaintiffs' customers, including but not limited to the

27

Round Valley School District, for the purpose of providing internet services in exchange for money.

28

Plaintiff is further informed and believes, and thereon relies, that Defendants Round Valley Indian

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

Tribes and/or All Tribal Networks have also secured customers for providing internet services, since obtaining licensure in March of 2021, despite the express limitations of its Public Service Pool designation.

46. Defendants Round Valley Indian Tribes, All Tribal Networks, and each of them, committed unlawful acts within the meaning of 47 U.S.C. § 206 as follows:

A. At various times since December of 2020 caused to be transmitted radio signals at the 6 GHz frequency for purposes not authorized for Public Service Pool licensees pursuant to 47 CFR § 90.15, 47 CFR § 90.20(x) and 47 U.S.C. § 301, as quoted hereinabove, in that they were not transmitted during an actual or impending emergency endangering life, health or property for the transmission of essential communications arising from the emergency;

B. After learning that transmission on the 6 GHz frequency interfered with Plaintiff's contractual services, communicated that they would continue to transmit on that frequency, without reference to any actual or impending emergency endangering life, health, or property, unless Plaintiff paid an initial sum of $7,000 per month;

C. On information and belief, when applying for its Public Service Pool license prior to March of 2021, said Defendants did not provide an adequate statement "describing the status of public communication facilities in the area of the applicant's establishment and the results of any attempts the applicant may have made to obtain public communication service," within the meaning of 47 CFR § 90.20(x)(A);

D. As required by 47 CFR § 90.175(c), said Defendants prior to obtaining licensure in March of 2021 failed to obtain concurrence to share the 6 GHz frequency with Plaintiff from Plaintiff's frequency coordinator, which at all times relevant was IntelPath;

E. As required by 47 CFR § 101.103(a) said Defendants prior to obtaining licensure in March of 2021 failed to cooperate in the selection and use of the proposed frequencies in order to avoid interference with Plaintiff's use as a common carrier, for which the Federal Communications Commission took no discretionary action; and

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

F.      As required by 47 CFR § 101.103(e) said Defendants prior to obtaining licensure in March of 2021 failed to amend their application to remove the conflict of frequencies as the later-filing applicant, for which the Federal Communications Commission took no discretionary action.

47.      Plaintiff has over 1000 contracts with customers to provide internet services in exchange for money, each of which has valuable consideration, and many of which are known by Defendants to exist.

48.      Defendants Round Valley Indian Tribes, All Tribal Networks, Micronet., and each of them, by their acts set forth herein above intentionally caused disruption of Plaintiff's internet services to its customers, and for the purpose of lessening competition or to restrain commerce, thereby making it impossible or impracticable for Plaintiff to perform.

49.      As a direct and proximate result of said Defendants' conduct, Plaintiff has been injured by Defendants in an amount to be proven at trial.

### SECOND COUNT

### (Violation of Sherman Antitrust Act, 15 U.S.C. § 1)

50.      Plaintiff incorporates paragraphs 1-49 by reference.

51.      Defendant All Tribal Networks, Round Valley Indian Tribes and James Gusman engaged in anti-competitive conduct by contacting Plaintiff's customers in the effort to monopolize the provision of internet services in rural Mendocino County. Said defendants misrepresented the scope of licensure as a Public Safety Pool licensee to both Plaintiff's customers and the public at large and further used the 6 GHz frequency for the purpose of disrupting and terminating Plaintiff's lawful provision of internet services, in order to achieve such a monopoly. Plaintiff has a lawful share of the market for internet services, for which said Defendants have interfered and diminished.

52.      In furtherance of their anti-competitive conduct, said Defendants entered into agreements, both written and oral, among themselves, in 2020 and in the first quarter of 2021, wherein it was agreed that Round Valley Indian Tribes would become the holder of an FCC license, All Tribal Networks, would use its status as an LLC to interfere with Plaintiff's services and solicit business from its customers and Micronet., would use its authority as both an agent for the licensee Round Valley Indian Tribes and FCC-approved frequency coordinator, for the common purpose of

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

1  terminating Plaintiff's ability to provide internet services in rural Mendocino County.

2  53.    As a direct and proximate result of Defendants' conduct, which are violations of the

3  Sherman Antitrust Act, 15 U.S.C. § 1, Plaintiff has been damaged by said Defendants in an amount

4  to be proven at trial.

5  ### THIRD COUNT

6  ### (Violation of Sherman Act, 15 U.S.C. § 2)

7  54.    Plaintiff incorporates paragraphs 1-53 by reference.

8  55.    The aforesaid actions by Defendants Round Valley Indian Tribes, All Tribal

9  Networks, and each of them, has harmed competition for internet services in rural Mendocino

10  County, and conspired to harm competition for internet services in rural Mendocino County, by

11  failing to acquire a lawful license that would foster competition and thereby establish a marketplace

12  with competitive pricing, and instead acted to stifle competition through the use of the 6 GHz

13  frequency in tandem with solicitation of Plaintiff's customers. The number and effectiveness of

14  competitors have been diminished by unlawful means.

15  56.    There is no appropriate or legitimate business justification for All Tribal Network's

16  use of the 6 GHz frequency in tandem with solicitation of Plaintiff's customers.

17  57.    As a direct and proximate result of Defendants' conduct, which are violations of the

18  Sherman Antitrust Act, 15 U.S.C. § 2, Plaintiff has been damaged by Defendants in an amount to be

19  proven at trial.

20  ### FOURTH COUNT

21  ### (Trade Libel)

22  58.    Plaintiff incorporates paragraphs 1-57 by reference.

23  59.    The statements by Round Valley Indian Tribes, All Tribal Networks, James Russ,

24  and James Gusman and each of them, regarding Plaintiff's internet services were untrue.

25  60.    Said Defendants' statements regarding Plaintiff's internet services were

26  communicated to the FCC and various customers and prospective customers of Plaintiff.

27  61.    Said Defendants' statements regarding Plaintiff's internet services were made with

28  malice.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

62.     As a result of said Defendants' false statements regarding Plaintiff's internet services, Plaintiff incurred lost earnings and profits, incurred harm to its reputation, and/or experienced decreased business traffic, for which Plaintiff has been damaged in an amount to be proven at trial.

### FIFTH COUNT

### (LANHAM ACT – FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

63.     Plaintiff incorporates paragraphs 1-62 by reference.

64.     The statements by Round Valley Indian Tribes, Round Valley Indian Tribes, All Tribal Networks, James Russ and James Gusman, and each of them, to third parties indicating that Plaintiff's internet services were defective, such as claims in its publications that Plaintiff's transmissions were "illegal activity," statements in its publications that Plaintiff had "issues with the County of Mendocino," that the FCC "deducted" some of Plaintiff's licenses, that there is "hassle/drama" and that there are "countless horror stories," together with its assertions that 6 GHz transmissions interfering with Plaintiff's pre-existing transmissions are necessary due to "heavy rains and adverse weather," among other statements hereinabove alleged, both in communications to third parties and in advertisements and promotions, are false, misleading, likely to cause confusion among internet users in need of services for connectivity.

65.     Said statements by Defendants, even if true or partially true, are deceptive or likely to deceive in a material way, in that they cast a false light and misleading inference that Plaintiff is a disreputable and unreliable provider of internet services when, in fact, Plaintiff has provided quality services to over 1000 customers.

66.     Said statements by Defendants, even if true or partially true, are deceptive or likely to deceive in a material way, in that they tend to assert that Defendants have a legitimate business purpose in wanting to transmit at 6 GHz when, in fact, Defendants have a fully operational capability to transmit at 11 GHz without a need to interfere with Plaintiff's pre-existing business practice of providing quality services to over 1000 customers on the 6 GHz frequency.

67.     Said statements by Defendants were published by electronic means and on the internet, and otherwise were communicated in interstate commerce.

68.     Said statements by Defendants caused or is likely to cause competitive or commercial injury to Plaintiff.

69.     Said statements by Defendants were communicated in bad faith and with intent to injure Plaintiff's commercial purposes.

70.     As a result of Defendants' false and/or misleading statements regarding Plaintiff's internet services, and Defendants' asserted need to transmit on a 6 MHz frequency, Plaintiff incurred lost earnings and profits, incurred harm to its reputation, and/or experienced decreased business traffic, for which Plaintiff has been damaged in an amount to be proven at trial.

**SIXTH COUNT**

**(Breach of Contract as Against IntelPath)**

71.     Plaintiff incorporates paragraphs 1-71 by reference.

72.     In March 2018, Plaintiff and IntelPath entered into an agreement wherein IntelPath agreed to reapply with the FCC for the paths in Your Town Online's paths in the WQHQ838 license and Your Town Online agreed to pay for these services.

73.     Your Town Online performed all its obligations under this agreement by paying for the services performed by IntelPath.

74.     IntelPath breached this agreement by failing to accurately enter the coordinates of the tower on Mount Sanhedrin where Your Town Online was broadcasting and which were accurately included in the WQHQ838 license.   Instead IntelPath entered the coordinates for a location approximately 600 yards away.

75.     IntelPath's breach has caused damages to Plaintiff in amount according to proof.

76.     In late 2020 or early 2021, Plaintiff entered into a written, oral, and implied-in-fact contract with Defendant IntelPath wherein said Defendant agreed to provide services as a frequency coordinator on Plaintiff's behalf, in relation to the FCC license application of Round Valley Indian Tribes.   As part of its duties under the agreement, IntelPath, was to provide data to Micronet. and otherwise represent Plaintiff's interests in connection with frequency coordination efforts. Plaintiff agreed to pay money as consideration for the agreement.

77.     IntelPath, breached said contract by failing to provide data and otherwise represent

- 16 -

1   Plaintiff as agreed.

2       78.    The breach of contractual obligations by IntelPath proximately caused damages to

3   Plaintiff, in an amount to be proven at trial.

4                            **SEVENTH COUNT**

5                       **(Declaratory and Injunctive Relief)**

6       79.    Plaintiff incorporates paragraphs 1-78 by reference.

7       80.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8       81.    A real and justiciable controversy exists as between Your Town Online and Round

9   Valley Indian Tribes, and All Tribal Networks, over the respective radio transmissions at 6 GHz at

10  Mount Sanhedrin, and adjudication of the parties' respective rights and responsibilities is requested.

11      82.    A real and justiciable controversy also exists as to Defendants' Round Valley Indian

12  Tribes, All Tribal Networks, James Gusman and James Russ', continuing disparagement of Plaintiff

13  and its business activities, and adjudication of the parties' respective rights and responsibilities is

14  requested.

15      83.    Plaintiff requests a speedy trial pursuant to Rule 57 of the Federal Rules of Civil

16  Procedure.

17      WHEREFORE, Plaintiffs pray for judgment as set forth below.

18                            **PRAYER FOR RELIEF**

19      1.    For money damages, according to proof;

20      2.    For a judicial declaration that the license with call sign WRMD895 is invalid, that

21  All Tribal Networks, shall not transmit from Mount Sanhedrin and its vicinity at a frequency of 6

22  GHz or approximately 6 GHz, and ordering that Defendants All Tribal Networks, James Gusman

23  and James Russ., and their officers, agents, servants, employees, attorneys, and those persons and

24  entities in active concert of participation with them shall cease and desist from communications

25  disparaging the quality or legality of Plaintiff's transmissions or provision of services;

26      3.    For an order preliminarily and permanently enjoining All Tribal Networks, from

27  transmitting from Mount Sanhedrin and its vicinity at a frequency of 6 GHz or approximately 6

28  GHz.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

4.      For an order preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees, attorneys, and those persons and entities in active concert of participation with them from untruthfully disparaging the quality or legality of Plaintiff's transmissions or its' provision of services.

5.      For money damages as against Intelpath, as alleged.

6.      For prejudgment interest in an amount to be determined at trial;

7.      For reimbursement of reasonable attorneys' fees and costs of suit as permitted by law;

8.      For punitive and exemplary damages, according to proof;

9.      For such other and further relief as the Court may deem just and proper.


DATED: June 9, 2021                          JOHNSTON | THOMAS, Attorneys at Law


                                             By:  _____*/s/ Richard C. O'Hare*_____
                                                  Richard C. O'Hare, Attorney for Plaintiff
                                                  YOUR TOWN ONLINE, INC.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

**DEMAND FOR JURY TRIAL**

Plaintiff Your Town Online Inc. demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: June 9, 2021                                    JOHNSTON | THOMAS, Attorneys at Law

By:  _____*/s/ Richard C. O'Hare*_____
Richard C. O'Hare, Attorney for Plaintiff
YOUR TOWN ONLINE, INC.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF